UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDON DAVID MICHA-EL BEY,

                Plaintiff,

-against-

URBAN FINANCIAL GROUP, INC., et al.,

                Defendants.

1:25-CV-1995 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff Lindon David Micha-El Bey, who is appearing *pro se*, brings this action asserting federal law civil claims, including claims of violations of his federal constitutional rights, as well as federal law criminal claims. He seeks damages, declaratory relief, and injunctive relief. The Court construes Plaintiff's complaint as asserting federal law civil claims under 42 U.S.C. §§ 1983 and 1985, as well as state law civil claims. Plaintiff names as defendants more than 100 persons and/or entities, including private companies, their officers and employees, the State of New York, the City of New York, the current and a former Governor of the State of New York, former Mayors of the City of New York, a former Bronx Borough President, former and current state court judges and referees, state court clerks, private attorneys, an Assistant Corporation Counsel of the City of New York, a New York City Marshal, New York City Department of Buildings ("NYCDOB") officers, New York City police officers, state court officers, bank officers, utility officers and employees, and individual tenants of the residential property at issue.

In an order dated and entered on March 28, 2025, the court denied Plaintiff's requests for immediate injunctive relief. (ECF 11.) On April 4, 2025, Plaintiff filed a letter seeking reconsideration of the court's March 28, 2025 order. (ECF 9.) On April 21, 2025, he filed a

notice of an interlocutory appeal of the court's March 28, 2025 order. (ECF 10.) While that interlocutory appeal was pending, in an order dated August 19, 2025, the court construed Plaintiff's abovementioned letter as a motion seeking reconsideration of the court's March 28, 2025 order and denied that motion. (ECF 11.) On October 17, 2025, the United States Court of Appeals for the Second Circuit dismissed Plaintiff's interlocutory appeal as frivolous. *Micha-El Bey v. Urban Fin. Grp., Inc.*, No. 25-1003 (2d Cir. Oct. 17, 2025) (issued as a mandate on Nov. 7, 2025).

By order dated March 25, 2025, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons discussed below, the Court dismisses this action, but grants Plaintiff leave to replead certain claims in an amended complaint, as specified below.

### STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"),

which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

The Court draws Plaintiff's allegations from the complaint (ECF 1) as well as from his application for an Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order (ECF 5) and from his "Affidavit in Support of Order to Show Cause for Preliminary Injunction and Temporary Restraining Order" (ECF 4), both of which the Court construes as supplements to the complaint.[1] Plaintiff alleges the following: Plaintiff's father, Michael A. Johnson, owned a residential property located at 1048 Elder Avenue in the Bronx, New York ("the property"). Mr. Johnson procured a reverse mortgage on that property from Nationwide Equities Corporation. Mr. Johnson died on August 14, 2012, having not fully repaid

---

[1] The Court quotes from these submissions verbatim. All spelling, grammar, and punctuation are as in the original submissions unless noted otherwise.

the debt owed with regard to that reverse mortgage. The reverse mortgage debt was ultimately assigned to Urban Financial Group, Inc. ("UFC").

Plaintiff and others had been residing at the property. Some of the others who lived there were tenants of Mr. Johnson and some may have been members of Mr. Johnson's and Plaintiff's family. On May 28, 2016, or June 5, 2016, officers from the New York City Police Department ("NYPD") and of the NYCDOB entered and searched Plaintiff's residence on the property without Plaintiff's consent, but pursuant to a warrant.

UFC, via counsel, sought foreclosure and sale of the property in the New York Supreme Court, Bronx County. That court ultimately issued a judgment of foreclosure and sale on January 9, 2017, directing the sale of the property at a courthouse auction. Plaintiff, who believes that he, along with his sibling(s), inherited the property, unsuccessfully challenged the foreclosure and sale of the property in the state court. The property was ultimately sold at an auction and was conveyed via a referee deed issued by a referee appointed by the state court. The new owner of the property—which appears to have been sold again at least once after it was purchased at the auction—then made efforts to evict Plaintiff and the others still residing there via holdover proceedings brought in the New York City Civil Court, Housing Part, Bronx County ("Housing Court").

During litigation in that court, on or about February 24, 2020, Plaintiff was arrested and taken into custody by New York State court officers pursuant to a warrant previously issued with respect to charges that Plaintiff asserts had been dismissed. He alleges that he was arrested in retaliation for a previous incident in which he was falsely accused by a state court officer of recording a state court proceeding. Later, on the day of his arrest, February 24, 2020, Plaintiff was ordered released by a judge.

4

In a final judgment of possession and warrant of eviction issued on March 13, 2024, the Housing Court ordered Plaintiff evicted from the property. Plaintiff's eviction was initially stayed but, ultimately, was ordered such that Plaintiff received a notice of eviction from a New York City Marshal dated February 19, 2025, indicating that the earliest date that he would be evicted would be March 6, 2025. Plaintiff filed the complaint commencing this action the next day, March 7, 2025.

In its March 28, 2025 order, the court denied Plaintiff's requests for immediate injunctive relief, but indicated that the court would issue an explanatory order at a later date. (ECF 8.) In the complaint itself, Plaintiff seeks damages from the defendants, their spouses, and their heirs. In addition, among other injunctive relief, Plaintiff seeks an order from this court: (1) voiding state court orders and judgments "facilitat[ing] the sale of [Plaintiff's] inheritances" (ECF 1, at 205-06); (2) enjoining the current owner(s) of the property from evicting Plaintiff and his family members residing there pending a jury trial, and barring the current owner(s) and any of its/his/her/their agents and employees from entering onto the property; (3) enjoining one of the tenants residing on the property from allowing the current owner(s) and any of its/his/her/their agents and employees from entering onto the property; (4) enjoining all New York State courts from continuing to operate; (5) enjoining the Governor of the State of New York from funding the New York State courts; (6) transferring all civil claims filed in the New York State courts to the appropriate federal district courts; and (7) dismissing all misdemeanor charges filed in the New York State courts and transferring all felony charges filed in the New York State courts to the appropriate federal district courts; (8) ordering that all future criminal charges be brought in the appropriate federal district courts; (9) enjoining the City of New York, the NYPD, and the

5

New York City Marshals from executing any state court judgments or orders; and (10) enjoining the City of New York from recording referee deeds.

Plaintiff also seeks, in his complaint, among other declaratory relief, the following: that (1) the state court judge defendants' actions in the abovementioned foreclosure and eviction proceedings be deemed unlawful, unconstitutional, and criminal; (2) the New York State judiciary system and its judges be deemed unlawful, unconstitutional, and criminal; (3) all referee deeds issued by New York State court appointed referees, and any property conveyances facilitated by such referee deeds, be deemed nullified; (4) recording of such referee deeds be deemed unlawful, unconstitutional, and criminal; and (5) any promissory note or other document used to justify the abovementioned mortgage debt be deemed counterfeit.

Plaintiff sues all of the defendants in their official and individual capacities and seeks the criminal prosecution of at least some of the individual defendants.

## DISCUSSION

### A.    Claims on behalf of others

The Court must dismiss all of Plaintiff's claims that he asserts on behalf of other individuals, including members of his family. The statutory provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted). "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

6

Plaintiff has not alleged any facts suggesting that he is an attorney. The Court therefore dismisses without prejudice Plaintiff's claims that he brings on behalf of other individuals, including members of his family.

**B.      Private prosecution**

To the extent that Plaintiff seeks the criminal prosecution of any of the defendants, or anyone else, the Court must dismiss such claims. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including any of the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim." (internal quotation marks and citation omitted)).

**C.      Probate exception to the court's subject matter jurisdiction**

Plaintiff seems to assert claims for relief that would recognize him as an owner of the property; he believes that he has inherited a legal interest in the property due to the death of his father, Mr. Johnson. Under the probate exception to a federal district court's subject matter jurisdiction, however, this court lacks subject matter jurisdiction to: (1) administer an estate, probate a will, or do any other purely probate matter, or (2) "'reach a [thing] in the custody of a

state court.'" *Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) (quoting *Marshall v. Marshall*, 547 U.S. 293, 312 (2006)). Thus, to the extent that Plaintiff asks this court to adjudicate that he has a legal interest in the property due to the death of his father, the Court dismisses such claims because, under the probate exception, the court lacks subject matter jurisdiction over such a claim for relief. *See* Fed. R. Civ. P. 12(h)(3).

**D.      The *Rooker-Feldman* doctrine**

Plaintiff seems to ask this Court to overturn a final order or judgment issued by the New York Supreme Court, Bronx County, directing the property's foreclosure and sale by auction, as well as a final order or judgment of the Housing Court directing his eviction from the property. The *Rooker-Feldman* doctrine, however, requires dismissal of these claims for relief. Under this doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Id.* at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a state court as to foreclosure and sale of a property and as to a person's eviction from that property. *See, e.g.*, *Ceccarelli v. Morgan Stanley Private Bank, N.A.*, No. 25-443-cv, 2025 WL 2992528, at *2 (2d Cir. Oct. 24, 2025) (summary order) (final state court foreclosure and sale judgment); *Jeffreys v. Deutsche Bank Trust Co.*, No. 22-3059, 2024 WL 482776, at *1 (2d Cir. Feb. 8, 2024) ("We agree with the district court that any direct challenge to the state foreclosure and eviction action is barred by the *Rooker-Feldman* doctrine. . . ."); *Gomez v. Yisroel*, No. 1:21-CV-2172 (PAC), 2021 WL 2138462, at *4 (S.D.N.Y. May 26, 2021) ("[T]he Court joins the overwhelming majority of Second Circuit decisions that have applied the *Rooker-Feldman* doctrine to dismiss

federal cases inviting review of state court foreclosure and sale judgments." (collecting cases));

*Kristopher v. Stone St. Props., LLC*, No. 1:13-CV-0566 (RJS), 2013 WL 499752, at *3

(S.D.N.Y. Jan. 29, 2013) ("[T]he state housing court has already entered a . . . judgment against

Plaintiff and issued a warrant of eviction. . . . Thus, to the extent that Plaintiff is now seeking to

challenge . . . [that] judgment . . . , the Court finds that it lacks the jurisdiction, under the *Rooker*

*Feldman* doctrine, to grant Plaintiff's requested relief.").

District court review of claims is barred under the *Rooker-Feldman* doctrine when four

requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries

caused by a final state court order or judgment; (3) the litigant invites district court review and

rejection of the final state court order or judgment; and (4) the final state court order or judgment

was rendered before the district court proceedings commenced. *Dorce v. City of New York*, 2

F.4th 82, 101 (2d Cir. 2021) (internal quotation marks and citation omitted).

Plaintiff challenges, in this court, previously issued final decisions of the New York

Supreme Court, Bronx County, and of the Housing Court. Those final decisions concluded that

the property at issue was to be foreclosed upon and sold at auction, and that Plaintiff was to be

evicted from that property. Plaintiff requests that this Court review and overturn those final state

court decisions. The *Rooker-Feldman* doctrine bars this Court from granting him such relief. The

Court therefore dismisses any of Plaintiff's claims challenging those final state court

determinations, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See*

Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

**E.    Eleventh Amendment immunity**

The Court dismisses Plaintiff's claims under both federal and state law against the State

of New York and against the current and former Governors of the State of New York, state court

judges, state court clerks, state court appointed referees, and state court officers in their official

capacities. The Court must dismiss these claims under the doctrine of Eleventh Amendment immunity.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity. . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States, their agencies, and their instrumentalities from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "To the extent that a state official is sued . . . in his [or her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Thus, the Eleventh Amendment further precludes claims against individual state officer defendants, in their official capacities, for damages, retrospective injunctive relief, and retrospective declaratory relief. *See Green*, 474 U.S. at 72-74; *Halderman*, 465 U.S. at 101-02; *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) (damages); *Pineda v. Doe 1-2 (Parole Officers)*, No. 7:25-CV-4552 (JGLC), 2025 WL 2145661, at *2-3 (S.D.N.Y. July 29, 2025) (retrospective injunctive and declaratory relief).

The Eleventh Amendment also precludes a plaintiff from seeking, in federal court, relief under state law against a State, its agencies, its instrumentalities, and its officers sued in their official capacities. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-42 (2002);

10

*Halderman*, 465 U.S. at 120-21; *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("'Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts,' it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court."); *Mobley v. Rodriguez*, No. 7-25-CV-6784 (NSR), 2025 WL 3042024, at *3 (S.D.N.Y. Oct. 21, 2025) (discussion in the context of state law claims brought against state officials in their official capacities in a federal court).

All officers of the State of New York (including the Governor and state court officers) enjoy Eleventh Amendment immunity when sued in their official capacities. *See, e.g.*, *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). This also includes judges of the State of New York, including Justices of the New York Supreme Court and Judges of the New York City Civil Court, Housing Part (also known as "Housing Court"), as well as their court clerks and their appointed referees when sued in their official capacities. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020) (affirming dismissal of suit against New York State judges for damages pursuant to the Eleventh Amendment), *abrogated on other grounds*, *N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); *Madore ex rel. M.R.M. & G.J.M. v. Pavone*, No. 5:25-CV-0095, 2025 WL 3003384, at *4 (N.D.N.Y. Oct. 27, 2025) (state court appointed referee; notice of appeal filed Feb. 6, 2026); *Bergrin v. United States*, No. 1:19-CV-9681 (VSB), 2022 WL 912280, at *13 (S.D.N.Y. Mar. 28, 2022) (Justice of New York Supreme Court); *Weissbrod v. Housing Part of the Civil Court of the City of New York*, 293 F. Supp. 2d 349, 354 (S.D.N.Y. 2003) (Berman, D.J.) (state court officials including Housing Court judges and New York City Civil Court chief and deputy clerks); *Gollomp v. Spitzer*, No. 1:06-CV-0802, 2007 WL 433361, at *3 (N.D.N.Y. Feb. 5, 2007) (New York Supreme Court law clerk

11

(law secretary)), *aff'd*, 568 F.3d 355; *cf. Gollomp*, 568 F.3d at 366 ("[T]he New York State Unified Court System is an arm of the State . . . and is therefore protected by Eleventh Amendment sovereign immunity.").

Congress has not abrogated the States' immunity for claims under Sections 1983 and 1985, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (Section 1983 claims); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order) (Section 1983 and 1985 claims), and the State of New York has not waived its immunity to suit in federal court for claims under these statutes, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977) (Section 1983 claims); *Winters v. New York*, No. 2:24-CV-7420, 2026 WL 710123, at *6 (E.D.N.Y. Mar. 13, 2026) (claims under 42 U.S.C. §§ 1983, 1985, and 1986).

The Court therefore dismisses Plaintiff's claims against the State of New York under both federal and state law under the doctrine of Eleventh Amendment immunity, for seeking monetary relief from a defendant who immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3*); see Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction."). For the same reasons, the Court also dismisses Plaintiff's official-capacity claims for damages and for retrospective injunctive and declaratory relief under federal and state law against the current and a former Governor of the State of New York, current and former state

12

court judges (including Justices of the New York Supreme Court, Bronx County, and Judges of the Housing Court), state court clerks, state court appointed referees, and state court officers.[2]

## F.    Judicial immunity

The Court must dismiss Plaintiff's Section 1983 and 1985 individual-capacity damages and injunctive relief claims against current and/or former New York State judges in the New York Supreme Court, Bronx County, and in the Housing Court, who adjudicated Plaintiff's foreclosure and eviction proceedings, as well as any state court clerks who assisted them, any referees appointed by them in those actions or proceedings, and any city marshal who executed a warrant of eviction, under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for damages in their individual capacities for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 9-12 (1991) (Section 1983 claims); *Deem v. DeMella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019) (affirming dismissal of Section 1983 and 1985 claims under the doctrine of judicial immunity); *Gross v. Rell*, 585 F.3d 72, 83-84 (2d Cir. 2009) (Section 1985 claims among others). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47,

---

[2] Under the exception to Eleventh Amendment immunity articulated in *Ex Parte Young*, 209 U.S. 123 (1908), "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citations omitted). Most, if not, all of Plaintiff's official-capacity claims for injunctive and declaratory relief with respect to these defendants, however, appear to be for retrospective relief, and thus, such claims are precluded by the Eleventh Amendment.

51 (2d Cir. 1994). Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken in absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). "[T]he scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Courts have extended this immunity from damages to "others who perform functions closely associated with the judicial process," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), when they are performing discretionary acts of a judicial nature that are essential to the judicial process, such as court clerks, court appointed referees, and city marshals executing eviction warrants, *see Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) (court clerks); *Oliver v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (law clerks); *Bey v. Ferdinand*, No.1:24-CV-6684 (LLS), 2025 WL 1505041, at *5 (S.D.N.Y. May, 21, 2025) (city marshal executing eviction warrant, citing cases) *Weaver v. Schiavo*, Nos. 1:17-CV-1406 (LAP), 1:18-CV-9955 (LAP), 1:09-CV-5091 (LAP), 2020 WL 496301, at *6 (S.D.N.Y. Jan. 30, 2020) (New York State court appointed referee in the foreclosure context), *aff'd*, Nos. 19-3242, 20-746 (L), 20-770 (Con), 20-776 (Con), 2020 WL 8767781 (2d Cir. Dec. 3, 2020) (summary order); *see also Gyadu v. Bainer*, No. 3:19-CV-1120, 2021 WL 2073919, at *7 (D. Conn. May 24, 2021) (applying quasi-judicial immunity to claims against a housing court clerk under Section 1985).

In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Courts have extended this amendment's immunity from

14

injunctive relief to "judicial employees entitled to judicial and quasi-judicial immunity." *Triestman v. McGinty*, 804 F. App'x 98, 100 (2d Cir. 2020) (summary order); *see Irazu v. Sainz De Aja*, No. 23-702-cv, 2023 WL 8447256, at *2 (2d Cir. Dec. 6, 2023) (summary order); *Etheridge v. City of New York*, No. 1:25-CV-8707 (LTS), 2026 WL734913, at *4-5 (S.D.N.Y. Mar. 16, 2026) (Family Court referee); *Starke v. Fuentes*, No. 7:25-CV-3108 (PMH), 2025 WL 2299258, at *4-5 (S.D.N.Y. Aug. 7, 2025) (state court clerk of court); *Bey*, 2025 WL 1505041, at *5 n. 5 (city marshal executing eviction warrant); *Chounlamontry v. Shortall*, 784 F. Supp. 3d 517, 530 (D. Conn. Sept. 27, 2024) (Connecticut state court judge as foreclosure referee), *report & recommendation adopted*, No. 3:24-CV-0440 (D. Conn. Apr. 3, 2025); *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 484 (E.D.N.Y. 2015) (state court chief clerk), *aff'd*, 639 F. App'x 38 (2d Cir. 2016) (summary order).

To the extent that Plaintiff asserts individual-capacity Section 1983 and 1985 damages and injunctive relief claims against current and/or former New York State judges in the New York Supreme Court, Bronx County, and in the Housing Court, who adjudicated his foreclosure and eviction actions and proceedings, as well as against any state court clerks who assisted them in doing so, any referee appointed by them in such actions and proceedings, and any city marshal who executed an eviction warrant, such claims arise from those defendants' acts or rulings taken in the course of presiding over those actions or proceedings or assisting the judges in doing so. Thus, Plaintiff has failed to allege any facts showing that these defendants have acted beyond the scope of their judicial responsibilities or outside of their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Inasmuch as Plaintiff sues these defendants for "acts arising out of, or related to, individual cases before" them, *Bliven*, 579 F.3d at 210, the doctrine of judicial immunity applies to his individual-capacity claims under Sections 1983 and 1985 for damages and injunctive relief

15

against these defendants. The Court therefore dismisses such claims under the doctrine of judicial immunity[3] because Plaintiff seeks monetary relief from defendants who are immune from such relief, *see* § 1915(e)(2)(B)(iii), and because such claims are frivolous, *see* § 1915(e)(2)(B)(i); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

## G.    Government attorney immunity

The Court must dismiss, under the doctrine of government attorney immunity, Plaintiff's Section 1983 damages claims against Ava Maria Brennan, Esq., an Assistant Corporation Counsel of the City of New York, in her individual capacity, arising from her efforts to obtain an administrative search warrant for the purpose of allowing NYCDOB and NYPD officers to search the property while Plaintiff resided there. Government attorneys are immune from individual-capacity Section 1983 claims for damages "when functioning as an advocate of the state [or local government] in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006). This immunity applies to government attorneys who perform functions "'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits." *Id.* (quoting *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)). This includes when a government attorney

---

[3] The amendment to Section 1983, allowing for injunctive relief against a judicial officer only if a state-court declaratory decree was violated or state-court declaratory relief is unavailable, bars Plaintiff from seeking injunctive relief against these defendants in their individual capacities. This is so because Plaintiff can seek review of their actions and/or rulings in the New York State appellate courts. *See Berlin v. Meijia*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. May 18, 2018).

applies for the issuance of an administrative search warrant. *See United States v. Colbert*, No. 1:87-CV-4789 (MGC), 1991 WL 183376, at *2 (S.D.N.Y. Sept. 11, 1991).

Thus, to the extent that Plaintiff asserts individual-capacity Section 1983 claims for damages against Brennan arising from her efforts to procure an administrative search warrant for the purpose of allowing NYCDOB and NYPD officers to search the property at issue, she is immune from suit as to such claims. Accordingly, the Court dismisses such claims for seeking monetary relief from a defendant who is immune from such relief. *See* § 1915(e)(2)(B)(iii).

**H.      Section 1983 claims against remaining individual state actor defendants sued in their individual capacities**

Plaintiff asserts Section 1983 claims against many remaining individual state actor defendants in their individual capacities, including, but not limited to, the current and a former Governor of the State of New York, former Mayors of the City of New York, a former Bronx Borough President, NYPD and NYCDOB officers, and state court officers. To state a claim under Section 1983 against an individual state actor, a plaintiff must allege facts showing that individual's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)). An individual defendant may not be held liable under Section 1983 solely because that individual defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a . . . [government] official liable under [Section] 1983, a plaintiff must plead and prove the elements

17

of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

With the exception of his individual-capacity Section 1983 claims against individual NYCDOB and NYPD officers and state court officers, Plaintiff has alleged nothing to suggest that any of the remaining individual state actor defendants were directly and personally involved in the alleged remaining violations of his federal constitutional rights. Accordingly, the Court dismisses Plaintiff's Section 1983 individual-capacity claims against the remaining individual state actor defendants, not including NYCDOB and NYPD officers and state court officers, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## I.    Section 1983 claims against the private defendants

The Court must dismiss Plaintiff's Section 1983 claims against all of the private defendants—those defendants that are neither entities, officers, nor employees of the State of New York nor of the City of New York. A claim for relief under Section 1983 must allege facts showing that the defendants acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . .  the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted)). Private individuals and other private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d

18

Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)). Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private attorney's or private law firm's representation does not constitute state action for the purpose of stating a Section 1983 claim against that private attorney or private law firm, *see O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. Oct. 5, 2020) (summary order) ("Private attorneys are generally not 'state actors' for the purposes of [Section] 1983."); *Jaffer v. Patterson*, No. 1:93-CV-3452 (JFK), 1994 WL 471459, at *2 (S.D.N.Y. Sept. 1, 1994) ("Private law firms and attorneys . . . are not state actors for [S]ection 1983 purposes."), *aff'd*, 43 F.3d 1457 (2d Cir. 1994) (table decision).

Plaintiff has alleged no facts showing how any of the private defendants, including any private attorneys or private law firms, functioned as a state actor when they allegedly violated Plaintiff's federal constitutional rights. The Court therefore dismisses Plaintiff's Section 1983 claims against these defendants for failure to state a claim upon which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**J.    Section 1985 claims**

The Court understands Plaintiff's complaint and supplements as asserting claims of conspiracy under Section 1985(3). To state such a claim, a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of her right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [Section 1985(3)] conspiracy must also be motivated by some

19

racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted).

Vague and unsupported assertions of a claim of conspiracy under Section 1985 will not suffice to state a claim upon which relief can be granted. *See, e.g.*, *Vidurek v. Koskinen*, 789 F. App'x 889, 893-94 (2d Cir. 2019) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

To the extent that Plaintiff asserts a conspiracy under Section 1985(3), his allegations are conclusory, vague, and without detail. The Court therefore dismisses Plaintiff's claims of conspiracy under Section 1985(3) for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## K.    City of New York and New York City officers sued in their official capacities

The Court dismisses Plaintiff's Section 1983 claims against the City of New York and all of his official-capacity claims against individual former and current officers and employees of the City of New York. With respect to such official-capacity claims, such claims are properly made against the municipality itself, specifically, the City of New York. *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A Section] 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials . . . [because] local government units can be sued directly for damages and injunctive or declaratory relief."). The Court therefore dismisses these official-capacity claims against individual former and current officers and employees of the City of New York for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), and construes them as brought against the City of New York itself, which is

a named defendant. The Court will discuss such claims brought under Section 1983 in the next paragraph.

When a plaintiff sues a municipality, like the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality entity itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal or other local government entity policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

A plaintiff may satisfy the policy or custom requirement by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of the those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (Preska, D.J.) (citations omitted).

21

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York caused a violation of his federal constitutional rights. Thus, the Court dismisses Plaintiff's claims under Section 1983 against the City of New York for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead these claims in an amended complaint in which he names the City of New York (not a New York City agency or a New York City officer or employee in their official capacity) as a defendant, and in which he alleges facts sufficient to state a claim under Section 1983 against the City of New York.

## L.    Section 1983 claims against the NYCDOB officers, NYPD officers, and New York State court officers in their individual capacities

The Court construes Plaintiff's complaint and supplements as asserting individual-capacity Section 1983 claims against the individual defendants alleged to be NYCDOB officers, NYPD officers, and New York State court officers arising from an allegedly illegal entry or entries into, and an illegal search or searches of, Plaintiff's residence on the property by those NYCDOB and NYPD officers, and arising from Plaintiff's alleged false arrest/false imprisonment by those New York State court officers. The Court must dismiss those claims, however, as untimely.

Within the State of New York, there is a three-year limitations period for claims brought under Section 1983. *Owens v. Okure*, 488 U.S. 235 (1989) (adopting three-year limitations period in N.Y.C.P.LR. § 214(5) for claims under Section 1983 arising within the State of New York). Generally, a claim under Section 1983 accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of [her] action.'" *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)). Thus, a Section 1983 claim of illegal entry into a person's home and of an illegal search of their home

22

accrues on the date of the alleged illegal entry/search. *See, e.g.*, *Deraffele v. City of New Rochelle*, No. 7:15-CV-0282 (KMK), 2016 WL 1274590, at \*10 (S.D.N.Y. Mar. 30, 2016) (collecting cases), *appeal dismissed*, No. 16-2369, 2016 WL 11855039 (2d Cir. Oct. 24, 2016). For Section 1983 claims of false arrest/false imprisonment,[4] the applicable limitations period begins to run when the illegal arrest/confinement without legal process ends. *Wallace v. Kato*, 549 U.S. 384, 388-90 (2007) (explaining that a Section 1983 claim of false arrest/false imprisonment accrues on the date when the illegal arrest/confinement without legal process begins, and that the applicable limitations period beings to run when that arrest/confinement ends).

Because the failure to file an action within the limitations period is an affirmative defense, Fed. R. Civ. P. 8(c)(1), a plaintiff is not required to plead that a claim is timely filed, *see Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). *Sua sponte* dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). Generally, a court may dismiss untimely *pro se* claims *sua sponte* so long as the court grants the *pro se* litigant notice and an opportunity to be heard before dismissal. *See Abbas*, 480 F.3d at 640.

Plaintiff's individual-capacity Section 1983 claims against the NYCDOB and NYPD officers arising from alleged illegal entry into and search of his residence on the property appear

---

[4] A Section 1983 claim of "'[f]alse arrest [remedies] an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with [a] false imprisonment [claim].'" *Evans v. City of New York*, 308 F. Supp. 2d 316, 329 n.8 (S.D.N.Y. 2004) (quoting *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting)), *aff'd*, 123 F. App'x 433 (2005) (summary order). Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

to arise from events alleged to have occurred on May 28, 2016, or June 5, 2016, when those officer defendants entered Plaintiff's residence. (*See* ECF 1, at 29-32, 124.) His individual-capacity Section 1983 claims against the state court officer defendants appear to arise from his alleged arrest by them at the Housing Court on February 24, 2020, and their taking him into custody until, later that day, a judge ordered those officers to release him. (ECF 4, at 48, 52-56.) Thus, the limitations period for Plaintiff's abovementioned Section 1983 claims arising from the alleged illegal entry and search expired at some point in 2019, and the limitations period for Plaintiff's abovementioned Section 1983 false arrest/false imprisonment claims expired on or about February 24, 2023.

Plaintiff did not file his complaint commencing this action in the court until March 7, 2025, years after those limitations periods expired. The Court therefore dismisses these claims as untimely, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead these claims in an amended complaint in which he alleges facts showing why these claims are timely or why the applicable limitations period should be equitably tolled, *see Abbas*, 480 F.3d at 640.

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because the Court has granted

24

Plaintiff leave to replead with respect to his Section 1983 claims against the City of New York, and has directed him to show cause why his individual-capacity Section 1983 claims against the NYCDOB, NYPD, and state court officer defendants are timely, the Court grants Plaintiff 30 days' leave to replead those claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. An additional effect of the entry of the judgment will be the Court's declination of consideration, under its supplemental jurisdiction, of Plaintiff's remaining state law claims not dismissed in this order. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order, which are the reasons why the court denied Plaintiff immediate injunctive relief in the court's March 28, 2025 order. (*See* ECF 8.) The Court, however, grants Plaintiff leave to replead, in an amended complaint to be filed within 30 days of the date of this order, those claims for which the Court has granted Plaintiff leave to replead, as discussed above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. An additional effect of the entry of the judgment will be the Court's declination of consideration, under its supplemental jurisdiction, of Plaintiff's remaining state law claims not dismissed in this order. *See* 28 U.S.C. § 1367(c)(3).

25

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:    May 26, 2026
          New York, New York

                                        _Louis L. Stanton_
                                         Louis L. Stanton
                                         U.S.D.J.

26